**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MAURICE A. ALEXANDER**, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 09-1977** |
| | * | |
| **ROY E. HANCOCK, et al.**, | * | |
| | * | |
| Defendants | * | |
| | * | |

**MEMORANDUM OPINION**

In this *pro se* Plaintiff's civil rights case, the Court previously issued a Memorandum Opinion granting Defendant Hancock's and Defendant Coffey's Motion to Dismiss [Document No. 21] and in a separate Order entered final judgment in their favor [Document No. 22]. At the time, the Court denied Defendant Powers' Motion to Dismiss, or in the Alternative, for Summary Judgment [Document No. 9], subject to being renewed if Powers could produce certain additional documentation. The Court also denied Alexander's Motion to Appoint Counsel [Document No. 15].

Powers has now filed additional documentation and a Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment [Document No. 23], asserting that he was not the officer who caused the alleged injuries to Alexander. When Alexander failed to filed an Opposition to the Renewed Motion, the Court issued an Order directing him to show cause within 20 days of said Order why his Complaint against Powers should not also be dismissed. Alexander then filed a Response reiterating that he continues to suffer negative effects from injuries suffered during his arrest but in no way

responding to Powers' claim that he was not the officer who caused whatever injuries Alexander may have suffered.

Ordinarily the Court might proceed to grant Powers' Motion *instanter*, dismiss the case as to him, and with no Defendant left standing, close the case altogether. However, careful review of the police reports now before the Court makes one thing patently clear: Alexander has sued the wrong person or persons. Thus while it seems clear that Powers was not at the scene when Alexander was made to exit from the suspect vehicle at Willet's Crossing Road and Crain Highway, there certainly were two other officers there. And one of those officers clearly states in the Charles County Sheriff's Office incident report:

> "I approached the passenger side of the vehicle with my duty weapon drawn. I ordered . . . Alexander out of the vehicle with his hands in the air. . . . I ordered Alexander to the ground. He refused to comply twice. The third time I ordered Alexander to the ground he stated 'just shoot me.'. . . I ordered Alexander to sit on the ground. He replied 'No.' I kicked Alexanders [sic] feet from underneath of him and he fell to the ground."

The author of the report apparently was not Powers, even though his name appears at the beginning of the narrative. The writer appears to have been either Bell or Wagner, most likely Bell, discerning from the barely legible signature in the Charles County police report. Neither individual of course has been sued in this case.

While the Court in no way intends to suggest that either Bell or Wagner are ultimately liable for any violation of Alexander's civil rights, the inquiry at this juncture

is whether Alexander can make a *prima facie* case against either or both of those officers. For present purposes, he may be able to do so. Alexander claims that he was thrown to the ground and kicked in the chest and ribcage. The author of the Charles County police report concedes that he kicked Alexander's feet from under him causing him to fall to the ground. He says nothing about the application of further force.

Yet the author of the report states that Alexander complained of experiencing pain at the time, that an ambulance was called to the scene, and that Alexander was examined and released.[1] How extensive, then, was Alexander's injury? Was the application of force excessive under the circumstances? This scenario may or may not raise a genuine issue of material fact. But that remains to be seen. What is necessary is that the proper Defendant or Defendants be brought into Court.

Review of the record also reveals Alexander's claim that, after being processed at the Charles County Detention Center, he was ushered onto the Detention Center parking lot where, after staggering a few feet, he collapsed. Leaving aside whether Alexander's assertion is or is not credible, what gives pause is Alexander's report that he was discovered by a passerby who called an ambulance that took him to Civista Hospital where he was allegedly diagnosed with having five fractured ribs, a collapsed lung, and the loss of four lower teeth and where he remained for five days.

How did those not insubstantial injuries occur? Were they the result of Alexander's encounter with the police during the vehicle stop- with or without justification? Were they inflicted at the Detention Center- again, with or without justification?

---

[1] Powers' affidavit states that an ambulance arrived at the scene but that Alexander declined medical treatment.

The extent of Alexander's reported injuries alone is enough to occasion reexamination of the case. Insofar as the officer or officers who conducted the vehicle stop at Willet's Crossing Road and Crain Highway may have inflicted the injuries, those injuries may well have been excessive, justifying a civil rights claim against them. Insofar as the injuries may have been inflicted at the Detention Center, whoever might be responsible for them may also be fairly answerable in Court to defend himself or themselves.

While the Court is not inclined at this point to reinstate Alexander's claim against Acting Charles County Administrator Roy E. Hancock or Charles County Sheriff Rex W. Coffey, it may well be that someone in the Charles County Detention Center will have to respond.

The solution to all this, in the Court's view, is for it to reconsider its earlier decision denying Alexander's request for the appointment of counsel and either give him time to bring privately retained counsel into the case or failing that, to appoint counsel for him. Once in the case, counsel will be able to bring the proper Defendant or Defendants into the case and to conduct appropriate discovery as to what went on when Alexander was taken to the Charles County Detention Center, formally adding as Defendants any individuals there who might be implicated in misconduct. Afterwards, counsel could pursue this action on Alexander's behalf as may be appropriate. In the meantime, so that the case will remain open pending its likely realignment by new counsel for Alexander, the Court will **DEFER** action on Powers' Motion.

## III.

Accordingly, Powers' Renewed Motion to Dismiss, or in the alternative, for Summary Judgment will be **DEFERRED**. The June 25, 2010 Order denying Alexander's Motion to Appoint Counsel [Document No. 22] is **RECONSIDERED**.

A separate Order will **ISSUE**.

**/s/**
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**December 13, 2010**